## BROOKS RESOURCES CORPORATION,
### *Respondent,*
#### *v.*
## DEPARTMENT OF REVENUE, *Appellant.*
### (898, 24402)
558 P2d 312

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and Theodore W. deLooze, Chief Tax Counsel.

*James V. Hurley,* Bend, argued the cause for respondent. With him on the brief were Neil R. Bryant and Gray, Fancher, Holmes & Hurley.

Before Denecke, Chief Justice, and McAllister, O'Connell, Holman, Tongue, Howell, Justices, and Lent, Justice pro tempore.

McALLISTER, J.

## McALLISTER, J.

The defendant, Department of Revenue, appeals from an order of the Oregon Tax Court which reversed three orders of the Department fixing the assessed valuation of certain real property owned by plaintiff. The property consists of domestic water systems located in three subdivisions designed as planned unit developments[1] located in Deschutes County known as Black Butte Ranch, Ponderosa Pines, and Tollgate.

The plaintiff, Brooks Resources Corporation, brought this action in the Tax Court to establish that its water systems were subject to appraisal by the Deschutes County appraiser rather than by the Department of Revenue and also to establish that its water systems had a nominal or no value as of the assessment date of January 1, 1974.

The Tax Court found that the water systems should be assessed by the Deschutes County appraiser and that the value of the water systems "must be attributed to the sold and unsold lots in accordance with some reasonable formula." The Tax Court remanded the case to defendant "to determine the values of the water systems to be attributed to each owner's lot or lots (including the unsold lots owned by the plaintiff as of January 1, 1974)" and to enter an amended order consistent with the Tax Court's decision.

There apparently is no dispute about the facts as found by the Tax Court.

---

[1]The Continuing Legal Education handbook, *Land Use,* defines planned unit development in § 11.5 as follows:

"A development in which the applicable subdivision and zoning restrictions apply to the development as a whole rather than to each individual lot is called a 'Planned Unit Development'. Detailed project plans must be approved by the governing body. For an illustration of a planned unit development, see Frankland v. City of Lake Oswego, 267 Or 452, 517 P2d 1042 (1973)."

The idea behind planned unit developments is described in *Frankland,* 267 Or at 461-463.

"Each planned unit development contains its own domestic central water system and, in the case of Black Butte Ranch (and perhaps in the others), the system is particularly designed to meet Fire Underwriters and municipal standards. Each system is adequate only for the specific development.

"The Utility Section of the Assessment and Appraisal Division of the Department of Revenue, following long-established procedures which it deemed to be required by ORS 308.515 (1) (a) and (1) (b), sought to determine the true cash value of the water services of each of the three planned unit developments as of January 1, 1974. Although each system varies from the others in size and capacity, the principal physical elements are the same: a well or wells, pump house, a pump with electrical controls and valving, a pressure tank, long lines of pipe of various diameters, hydrants, services to building lots, and, in the case of Black Butte Ranch, a standby diesel engine."

The plaintiff, pursuant to ORS 308.595 (2), appealed from the defendant's original assessments of the water systems as of January 1, 1974. Plaintiff pleaded that the value of each water system was either nominal or zero, citing *Tualatin Development v. Dept. of Rev.,* 256 Or 323, 473 P2d 660 (1970).

"A hearing on each petition was held by the Department of Revenue on June 24, 1974 and the original assessments were increased by three orders dated July 17, 1974, as follows: No. A&AU-74-59, Black Butte Ranch water system, from $552,000 to $736,000; No. A&AU-74-60, Ponderosa Pines water system, from $60,800 to $76,000; and No. A&AU-74-61, Tollgate water system, $104,000 to $130,000. The increase by the Department of Revenue was made on recommendation of the defendant's appraisal engineer, Robert E. Graf, who had appraised each of the systems as of January 1, 1974."

"Mr. Graf testified that in his original appraisals he had discounted his findings of value by 20 percent,

more or less, because of the lack of earnings in each of the three systems. Subsequently, convinced that the systems were purposely operated with the intent that no income be produced, he eliminated the discount, relying solely on a historical cost approach to value, less depreciation."

However, the defendant conceded that its notices to plaintiff respecting the January 1, 1974 values mailed pursuant to ORS 308.595 (2) were void for failure to provide the statutory six days' notice to plaintiff to appear. See ORS 308.595 (1), leaving the defendant able to defend only the amount of its original appraisals.

"At the trial in [the Tax Court] it was first revealed that an error in plaintiff's annual statement (filed pursuant to ORS 308.520 and 308.525), relied upon by the defendant, had resulted in an excess cost being reported for the water system at Black Butte Ranch, in that an expense attributable by the plaintiff solely to the water system was actually due in part to the cost of trench installation of electrical and telephone lines. Counsel stipulated during the trial that this required the reduction of the original appraisal of the Black Butte Ranch system from $552,000 to $480,000.

"Plaintiff contended that the values of each of the water systems (and all other common interest) were assessable to the platted lots located in each development, respectively, and that the water systems had no independent value; that the assessed values of the lots, as appraised by the county assessor, actually included the values of the water systems, resulting in double taxation of such values; that the value of each water system is only nominal or zero because the systems have operated at a loss since inception, that economic projections show their incapability of generating income, but the plaintiff is estopped from removing the systems or from charging profitable rates or using a system outside of the development for which it is planned. * * *"

The Tax Court found that the water systems did have an independent value and that the increased amount assessed by defendant by order of June 24, 1974 was an accurate valuation. The Tax Court noted that by the end of the trial plaintiff had received adequate notice of the increase so that the later valuation could be considered and remanded the matter to defendant to complete the hearing procedure on the increase. The Tax Court also held that the valuation should be allocated among the individual lots, sold and unsold, and that allocation by some reasonable formula should be accomplished on the remand. Finally, the Tax Court held that the county assessor, rather than defendant, was the proper agency to assess the water systems.

■   We consider first whether the defendant or the county assessor is the proper agency to assess plaintiff's water systems. Defendant's authority to assess property is prescribed in ORS Chapter 308. ORS 308.515 assigns to the defendant the responsibility to assess utilities, including water systems:

"(1) The Department of Revenue shall make an annual assessment, upon an assessment roll to be prepared by the division of the department charged with property tax administration, of the following property having a situs in this state:

"(a) Except as provided in subsection (2) [unrelated to this proceeding] of this section, any property used or held for its own future use by any company in performing or maintaining any of the following businesses or services or in selling any of the following commodities, whether in domestic or interstate commerce or both, and whether mutually, or for hire, sale or consumption by other persons: * * * water; * * *."

This responsibility is not limited to ventures which are making a profit selling water since the above statute refers to providing the service "mutually," and ORS 308.515 further provides:

"(6) The provisions of ORS 308.505 to 308.730 shall be construed to subject to assessment by the department the property owned, leased or occupied by a legal entity

not yet engaged in a business, service or sale of commodity enumerated in ORS 308.515, which is intended for operation or use in such a business, service or sale of commodity."

ORS 308.517 provides the persons to whom property shall be assessed by the department and that the county assessor shall assess all property not assessed by the department:

"(1) Except as provided in subsections (2) and (3) of this section, the Department of Revenue shall assess to the property user all property owned, leased, rented, chartered or otherwise held for or used by it in performing a business, service or sale of a commodity enumerated in ORS 308.515.

\* \* \* \* \*

"(5) All property not assessed by the Department of Revenue shall be assessed in accordance with law by the assessor of the county in which such property is situated."

ORS 308.635 provides that when the assessment is complete, the Department of Revenue shall certify the assessment to the appropriate county assessor who shall enter it on the county assessment roll with allocations to appropriate tax districts and taxes shall be levied and collected in the same manner and at the same time as taxes on other properties listed on the rolls.

ORS 307.210 provides an exemption from taxation for mutual water districts:

"(1) After the Department of Revenue has taken the action required by ORS 307.240, all property consisting of land, improvements, fixtures, equipment or supplies, including dams and dikes, owned by any association of persons, wholly mutual or cooperative in character, whether incorporated or unincorporated, used primarily in storing, conveying and distributing water to the members of such association for domestic use or irrigation, where such association has no other business or purpose and its operations are conducted without profit in money, is exempt from taxation."

This statute would exempt the water systems if owned

by a property owners' association. Plaintiff was unwilling to turn the water systems over to such an association at the time of the trial since it could not be assured that the systems would be properly operated.

■ The Tax Court found that this system of assessment of utilities was affected by the Unit Ownership Law, ORS 91.505 to 91.675, and that the Unit Ownership Law applied to this case.

The Unit Ownership Law provides for a condominium-type plan of ownership in which individuals own both a separate unit, for example an apartment, plus an undivided interest in the common elements of the condominium which may include land, common areas of buildings, and central services such as water systems. There are numerous requirements which must be met in order to comply with the Unit Ownership Law. There is no evidence that the plaintiff intended its subdivisions to be organized under the Unit Ownership Law and no evidence that plaintiff complied with the requirements of that law. We think the Tax Court erred when it treated plaintiff's planned unit developments as if they were organized under the Unit Ownership Law.

The Unit Ownership Law does not mention the requirements of ORS 308.505 to 308.665 requiring the Department of Revenue to assess utilities. It may be that property subject to the Unit Ownership Law is excepted from assessment by the Department of Revenue, but we need not consider that question in this case.

The planned unit developments involved in this case were authorized under Deschutes County ordinances adopted under ORS 92.044, which allowed local governments to adopt regulations applicable to subdivisions. Plaintiff argues that its planned unit developments are similar to developments under the Unit Ownership Law and, therefore, it is "logical and reasonable" to apply the same taxing provisions to its developments.

[ 1184 ]

Since plaintiff chose to organize its subdivisions as planned unit developments instead of as condominiums under the Unit Ownership Law it cannot claim the tax advantages, if any, of the Unit Ownership Law.

■ ORS 308.505 to 308.665 provide the standard means for assessing utilities for real property tax purposes. This court will not find an exception to that procedure unless it finds an express exception or a clear statutory contradiction. To the extent that the Tax Court's opinion in *Ron Jones & Co. et al v. Dept. of Rev.,* 5 OTR 495 (1974), is not in accord with this opinion it is disapproved.

■ Plaintiff contends that ownership of the water systems has, in effect, been transferred to the lot owners so that taxing both the water systems and the lots results in double taxation.

Plaintiff relies on *Tualatin Development v. Dept. of Rev., supra,* in support of its contention that the entire value of the water systems has been transferred to the lots, sold and unsold, in the development. In *Tualatin* this court held that the golf course, which was built on the required open space of a planned unit development had no taxable value. The court noted that the plaintiff had used the required open space as a golf course in order to obtain approval for its development and that it was estopped by reason of representations to purchasers from using the golf course area for other than open space and recreational use. The course was found to be unprofitable and a raising of the membership dues had resulted in a loss of membership. This court found that the use of the land was so severely restricted that its ownership was of no benefit to the owners and consequently there was no taxable value in the land.

The case at bar is like *Tualatin* in that plaintiff would be bound by estoppel, but bound only to deliver water to purchasers of lots in its developments. Plaintiff's president testified that the corporation had

guaranteed to deliver water to each lot. He did not believe that the lot owners had acquired an easement or like interest in the water systems themselves. He testified that the plaintiff was free to sell the water systems to a third party, although he said that it would not do so without a guarantee that the systems would be operated properly and that the third party would not raise rates so that they were not competitive.

The cases cited in *Tualatin,* and on which it was based, involved taxation of tracts of land which were so restricted by means of easements or estoppel that the property was of no value to the owners thereof. There is no evidence in this case that plaintiff was restricted in the use or disposal of its water systems. Plaintiff was only required to furnish water to each lot sold.

On January 1, 1974, the date of this assessment, the water systems were operating at a loss. In part, this was because many lots had not yet been sold and houses had not yet been built on many lots that had been sold. Plaintiff was losing money because its water systems were overbuilt during the beginning part of its development as a necessary expense of constructing a housing development and does not indicate that plaintiff could not, in due course, operate its water systems at a profit.

The reasons plaintiff is not making a profit on the water systems are business reasons: (1) the developments are new and the systems are not yet fully used and (2) plaintiff is willing to take a loss on the operation of the water systems so as to make more profits in sale of lots. We find that in this case *Tualatin* is not apposite.

The Tax Court found that beneficial ownership of the water systems had been transferred to the lot owners so that the full value of the water systems should be apportioned among the individual lots, sold and unsold.

Plaintiff contends that in setting the selling price of the lots it apportioned its total expenses and costs of improvements among the individual lots and then doubled the amount to set the selling price. Plaintiff also contends that since the cost of the water systems was included in the price of the lots, an interest in the water systems was transferred to the lot purchaser.

It is true that a lot with water is more valuable than a lot without water, but this does not mean that the owner of the lot somehow owns the means of providing water to his lot. If plaintiff had built a subdivision to which water was provided by an independent private water company or by the city of Bend, the lots in that development would be more valuable than similar lots without water provided. However the extra price paid by the purchasers of the lots would not give them ownership of either the private or municipal water systems.

Since the lot owners have acquired no ownership rights in the water systems, but only the right to have water delivered to their lots, there is no double taxation when both the water systems and the individual lots are assessed and real property taxes are levied upon them.

■ Plaintiff contended that defendant did not use the proper method of determining the value of its water systems.

ORS 308.323 directs that all property shall be assessed at its true cash value. ORS 308.205 defines "true cash value" as:

> "* * * market value as of the assessment date. * * * With respect to property which has no immediate market value, its true cash value shall be the amount of money that would justly compensate the owner for loss of the property."

Defendant's appraiser who assessed plaintiff's water systems testified that he appraises 200 water systems per year and that he is rarely able to use a market value approach because sales are rare and

usually not at arm's length. Plaintiff does not challenge this. The appraiser then testified that he prefers to use a mixture of methods and, in fact, had originally used a cost method modified by an income method in these cases. He first calculated the historical cost less depreciation and then deducted twenty per cent from the cost value because plaintiff had made no profit. He later discovered that the water systems were being deliberately operated at a loss in order to increase the sale of lots and recommended that, since the income factor was not a true indicator of value, the water systems should be taxed at full value without an adjustment for operating losses.

We find that defendant's method of appraisal was proper.

The Tax Court found that the plaintiff was entitled to a further hearing by the Department to determine whether the Department was justified in increasing the assessment. We agree. The Department should also determine any adjustment necessary for the reallocation of trenching costs at Black Butte Ranch.

The case is remanded to the Tax Court with instructions to remand the case to defendant to hold such a hearing and for further proceedings not inconsistent with this opinion.

Reversed and remanded.