CRABTREE, J. T. C.
Plaintiff seeks review of a judgment of the Hudson County Board of Taxation reducing the 1976 assessment on its property located at 6050 Boulevard East, West New York, New Jersey (Block 38.09, Lot 24-B). The assessment and the county board action thereon were:
County Board Assessment Judgment
Land $ -0- $ -0-
Improvements 466,800 405,000
Total $466,800 $405,000
Defendant seeks no further review of the county board judgment.
The subject of the controversy is a five-level parking garage located in Tower West Condominium, a high-rise complex of 193 condominium apartment units. Plaintiff, the record owner of the subject property, is a nonprofit corporation organized to administer, supervise and manage the condominium in accordance with the New Jersey Condominium Act, N.J.S.A. 46:8B-1 et seq. (the act).
At issue is the alleged duplicative assessment of the parking garage, plaintiff arguing that the value thereof was reflected in and fully absorbed by the condominium units, and therefore, a separate assessment in any amount for the garage was invalid as a matter of law. Plaintiff offered no proofs concerning value.
Tower West Condominium was created in 1975 pursuant to the aforementioned Condominium Act. The sponsor was Tower West Apartments, Inc. The master deed, executed and recorded in compliance with §§ 8 and 9 of the act, N.J.S.A. 46:8B-8 and 9, provided, among other things, for the following:
(1) Each condominium unit owner was the owner in fee of the dwelling unit and of a pro rata share, as a tenant in common, of the common elements.
(2) Ownership of the units and of the common elements included no interest in the common areas.
*569 (3) The five-level garage was conveyed to plaintiff as five separate parcels, which were described as the “Common Areas.”
(4) The conveyance of the common areas to plaintiff was accompanied by restrictions. The interest so conveyed was declared to have a “permanent character,” which could not be altered or changed without the acquiescence of all unit owners, and the common areas could not be separately conveyed or encumbered without the unanimous consent of the unit owners.
The declaration of restrictive covenants, incorporated in the master deed, including the following:
(a) Each unit owner automatically became a member of plaintiff and such membership was coterminous with unit ownership. Membership was nontransferrable except as an incident to transfer of unit ownership.
(b) The restrictive covenants could not be revoked or amended without the consent of all unit owners and mortgagees thereof.
(c) All unit owners were bound to contribute to the common expenses of administration, maintenance, repair or replacement of common elements and common areas and to the administration of plaintiff association. No unit owner could absolve himself of his obligation in this regard by waiving use or enjoyment of the common elements or common areas.
(d) In the event the common elements or common areas, or any part thereof, were taken by eminent domain, each unit owner was entitled to a distributive share of the proceeds thereof, measured by his percentage of ownership in the common elements.
The condominium “Offering Plan” describes the property offered for sale as 193 condominium apartment units and undivided interests in the common elements. The plan provided the following with respect to the parking garage:
(i) Space was provided for 201 automobiles.
(ii) The sponsor reserved the right to change the layout of the parking spaces, subject to preservation of at least 201 spaces.
(iii) Each unit owner was entitled to the use of one parking space upon payment of a monthly rental of $35 to plaintiff. No services were provided in the garage.
The separate assessment of the parking garage is not prohibited by the act. N.J.S.A. 46:8B-19 provides, pertinently:
All property taxes, special assessments and other charges imposed by any taxing authority shall be separately assessed against and collected on each until as a single parcel, and not on the condominium property as a whole ....
“Unit” is defined in N.J.S.A. 46:8B-3(o) to include the “proportionate undivided interest in the common elements” which, by virtue of N.J.S.A. 46.-8B-6, are inseparable from the units to which they are assigned. “Common elements” is defined in N.J.S.A. 46:8B-3(d) to include “parking areas” unless any such elements are “specifically reserved or limited to a particular unit *570 or group of units.” Thus, the act contemplates and expressly permits the existence of separate condominium property which is not conveyed as part of the condominium unit. Here, both the offering plan and the master deed explicitly declare that the parking garage is not a common element a proportionate interest in which accompanies ownership of each unit. Those instruments also make it clear that no unit owner has any interest in the parking garage beyond the use of a single space which is conditioned upon payment of a monthly fee.
Accordingly, the parking garage in this case is not assessable as part of each condominium unit within the purview of N.J.S.A. 46:8B-19.
Plaintiff argues that, as a matter of law, the parking garage had no independent value, that such value resided in the individual condominium units and that use of the garage was part of the bundle of rights associated with unit ownership.
This concept of transfer of value, frequently applied in the dominant-servient tenement context, is not a novel judicial principle in this State. Our courts, relying chiefly upon the landmark case of Tax Lien Co. of New York, Inc. v. Schultze, 213 N.Y. 9, 106 N.E. 751 (Ct.App.1914), have held that the market value of property subject to an easement is reduced, and the value of the property benefiting therefrom is enhanced, by the value of the easement, and the respective tenements (dominant and servient) should be assessed accordingly. Ehren Realty Co. v. Magna Charta B. & L. Ass’n, 120 N.J.Eq. 136, 184 A. 203 (Ch.1936); Metropolitan Life Ins. Co. v. McGurk, 15 N.J. Misc. 572, 193 A. 696 (Cir.Ct.1937), aff’d 119 N.J.L. 517, 197 A. 47 (E. & A. 1938); Lipman v. Shriver, 51 N.J.Super. 356, 144 A.2d 37 (Law Div. 1958). It is immaterial for . tax assessment purposes whether the fee owner holds title subject to private easements, public rights to use and enjoyment, or burdens in the nature of servitudes imposed by contract or deed covenants. Englewood Cliffs v. Allison’s Estate, 69 N.J.Super 514, 174 A.2d 631 (App.Div.1961).
*571 Plaintiff contends that the transfer-of-value rule applies here, as the rights of unit owners to use of the garage are the equivalent of rights of the owners of dominant tenements vis-a-vis servient tenements, and that, by reason of the servitudes imposed upon the garage in favor of the unit owners, the value of the garage is wholly attributable to and incorporated in the values of the units. To prevail in this case, plaintiff must show that the “servient tenement,” /. e., the parking garage, has no value of beneficial interest for plaintiff, its owner. Brooks Resources Corp. v. Department of Revenue, 276 Or. 1177, 558 P.2d 312 (Sup.Ct.1976); Grasser v. Graham, 97 Misc.2d 417, 411 N.Y.S.2d 836 (Sup.Ct.1978) Plaintiff has made no such showing.
In Brooks Resources the taxpayer, owner of domestic water systems in a planned urban development (PUD), claimed that its property tax assessments were duplicative in that the value of the systems was entirely attributable to lots in the PUD and the taxpayer had no beneficial interest in the systems. The lot owners acquired no ownership rights in the systems themselves; they were merely entitled to have water delivered to their lots. The Oregon Supreme Court reversed the Oregon Tax Court, which had accepted the taxpayer’s contention, and held that the domestic water systems were validly assessed, saying:
Plaintiff contends that in setting the selling price of the lots it apportioned its total expenses and costs of improvements among the individual lots and then doubled the amount to set the selling price. Plaintiff also contends that since the cost of the water systems was included in the price of the lots, an interest in the water systems was transferred to the lot purchaser.
It is true that a lot with water is more valuable than a lot without water, but this does not mean that the owner of the lot somehow owns the means of providing water to his lot. If plaintiff had built a subdivision to which water was provided by an independent private water company or by the city of Bend, the lots in that development would be more valuable than similar lots without water provided. However the extra price paid by the purchasers of the lots would not give them ownership of either the private or municipal water systems. Since the lot owners have acquired no ownership rights in the water system, but only the right to have water delivered to their lots, there is no double taxation when both the water systems and the individual lots are assessed and real property taxes are levied upon them. [558 P.2d at 317]
The Oregon Supreme Court’s sound reasoning has special application to the facts of the case under review. Here, the *572 condominium units are probably worth more with the parking garage than without it. If the condominium complex were constructed next door to an independently-owned, five-level, indoor parking garage to which condominium unit owners were given preferred access, the condominium units would probably be more valuable than they would be if the garage were not there. However, the extra price paid by purchasers of the condominium units would certainly not give them ownership of the parking garage. As the facts of this case indicate, the unit owners have been expressly denied ownership rights in plaintiff’s garage. Their rights therein are limited to use only.
Grasser involved a challenge to the tax assessment of recreational parcels located in a residential subdivision. The owner of the parcels was a nonprofit corporation formed by the developer of a planned community for the purpose of operating and maintaining certain facilities, including the property in question, for the benefit of residents of the subdivision. Use and enjoyment of the recreational parcels was reserved to those residents, who were automatically members of the non-profit corporation. The latter claimed that it had no beneficial interest in the property, as the value thereof was wholly attributable to the residential properties constituting the dominant estates, citing Tax Lien Co. of New York, Inc. v. Schultze, supra. The court denied the corporation’s motion for summary judgment on the ground that the moving papers did not disclose unequivocally that the recreation parcels had little or no value of beneficial interest to the owner. The court indicated that a determination that such beneficial interest existed depended upon several factors.
Among the factors alluded to by the court — and which are relevant here — were the following:
1. Whether the parcel can be considered a park or public facility for all intents and purposes, so that its owner cannot hope to reclaim any value from the property.
2. Whether the owner is precluded from charging admission to strangers.
3. Whether the parcel is so interwoven with a dominant estate that it has no extrinsic value.
*573 The first factor pertains to preemptive use by the owners of the allegedly dominant estates, here, the unit owners. While each unit owner is assessed a pro rata share of the expenses of the parking garage, he may use the garage only upon payment of a monthly fee. Moreover, his entitlement is limited to one parking space. Thus, use and enjoyment of the parking garage is not fully and unconditionally preempted by the unit owners so as to deprive the owner of the garage of all beneficial interest therein.
The second factor is related to the first. Plaintiff is not precluded from leasing garage space to outsiders. Indeed, the condominium sponsor reserved the right to change the layout of the garage; and there is no evidence to indicate that enlargement of parking facilities to accommodate more vehicles was not feasible.
Finally, with respect to the third factor, the proofs do not indicate that the parking garage lacks extrinsic value. Nothing in the governing instruments prevents plaintiff, with the consent of all unit owners, from selling or leasing the garage to an outside entrepreneur, to be used as a conventional parking garage open to the general public. While the requirement of unanimous consent of the unit owners may inhibit alienation, such requirement affects the title only, not the use which can be made of the property. The law requires an assessment of the value of the land, and that assessed value represents the value of all interests therein. In re Neptune Tp. Appeal, 86 N.J.Super. 492, 207 A.2d 330 (App.Div.1965); Secaucus v. Damsil, Inc., 120 N.J.Super. 470, 295 A.2d 8 (App.Div.1972), certif. den. 62 N.J. 90 (1972); Hirschman v. Millburn Tp., 1 N.J.Tax 27 (Tax Ct. 1980); N.J.S.A. 54:4-23. To be sure, the right of preferred access given to each unit owner, subject to a fee, would probably affect the price realizable in an arms’ length transaction. What matters here is the absence of any proof that plaintiff has been deprived of all beneficial interest in the subject property. Cf. Englewood Cliffs v. Allison’s Estate, 69 N.J.Super. 514, 174 A.2d 631 (App.Div.1961) (value of property reduced, but not eliminated, by testamentary creation of public park thereon).
*574 Plaintiff has failed to meet its burden of overcoming the presumptive correctness attending the county board judgment. Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 89 A.2d 385 (1952). Judgment will be entered affirming the judgment of the Hudson County Board of Taxation.