IN THE OREGON TAX COURT

MARCHEL et al
*v.*
DEPARTMENT OF REVENUE
(TC 1789)

Relan Colley, Colley & Colley, Corvallis, represented plaintiffs.

G. F. Bartz, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision, in part, for defendant rendered March 22, 1983.

**SAMUEL B. STEWART, Judge.**

The plaintiffs appealed from the defendant's Opinion and Order No. VL 82-37 affirming the determination of the

true cash value of Tax Lots 800, 801 and 600 as found in the Benton County tax rolls on January 1, 1980, in the amounts of $65,750, $12,640 and $29,350, respectively. Relan Colley, Esq., represented the plaintiffs and Mr. Gerald F. Bartz, Assistant Attorney General, Tax Section, appeared on behalf of the defendant.

The subject property consists of three contiguous parcels of land north of the Willamette River with Tax Lot 801 abutting the river. The three parcels are in an exclusive farm use zone and were assessed accordingly until 1980 when plaintiffs were notified that the subject property did not meet the requirements for special assessment for farm use. Deferred taxes were calculated and billed on the 1980-1981 tax roll.

## Parcel 801

The parcel is long and narrow, consisting of 13.79 acres, and the Willamette River is its south boundary. In 1973, the plaintiff corporation granted an easement to the State of Oregon for scenic and recreational purposes which limits any economic use of the property by the plaintiff.

Plaintiff corporation alleges that the parcel was totally exempt from tax, that, if taxable, the parcel should be valued as Western Oregon forest land at $137 per acre less a substantial reduction reflecting the effect of the easement and a farmland penalty should not have been asserted.

## Total Exemption

At the trial, the basis upon which the claim of total exemption was predicated was not asserted. It may be plaintiff is proceeding on the basis that, inasmuch as the state has an easement over parcel 801, that parcel is totally exempt under ORS 307.090. If that is the case, the implicit assumption would be that the state owns all of the bundle of rights involved, but the court cannot determine this fact from plaintiff's evidence. Thus, the copy of an easement attached to Plaintiffs' Exhibit 2 is alleged to be a copy of the easement executed by plaintiff, but the grantor's name is blank, it was not executed by the plaintiff corporation, or anyone else, and Exhibit A, which describes the grantor's property subject to the easement, was not attached.

■ The appraisal offered by the defendant's appraiser

(Def Ex A, Addenda, pp 35-38), however, does contain an identical easement with the names of the plaintiff individuals as grantors written in on page one and presumably their signatures on page three of the easement and containing Exhibit A. A perusal of that copy indicates that the state, rather than proceeding under ORS 390.310, Willamette River Greenway, proceeded under ORS 390.110, Acquisition of Development by Department of Transportation of Scenic and Historic Places. A possible reason for proceeding under the latter may lie in the fact that the greenway makes provision for the continuance of farm use without restriction (ORS 390.314(2)(c)) whereas acquisition of scenic and historic places does not so provide. It follows that whatever rights in the underlying fee have been retained by plaintiffs, agricultural use is not one of them. The easement provides the grantee, i.e., the state, may enter upon the easement area to "* * * improve (planting, seeding, etc.), enhance, restore, preserve and protect the natural beauty thereof. * * *" And grantors are precluded from destroying, cutting or removing any trees, shrubs or brush without a written permit from the grantee. Since ORS 390.110(3) makes it quite clear that the object of the state, among other considerations, is to "* * * acquire land * * * necssary for the development and maintenance of * * * forest or timbered areas * * *" it follows that grantors do not have a right to use the underlying fee for purpose of growing and harvesting forest products. What rights, then, have been retained by grantors which are subject to taxation?

Plaintiffs' appraiser alleged that the restrictions on use contained in the easement were such that the grantors could make no economic use of the property. Defendant's appraiser alleged that the highest and best use was as a buffer for parcel 800 and as recreational property. The court is not persuaded that plaintiffs' remaining interest in the fee has a market value. The recreational use is or can be enjoyed in common with the public generally and, accordingly, even if retained by plaintiff, has no value to it or them by virtue of that fact. If parcel 801 is a buffer, it is so because of the state's easement, not because of a retained interest in plaintiffs and, accordingly, has no value to it or them. Under the circumstances, the easement owned by the state is or should be exempt but it does not follow that plaintiffs' retained interest

in the fee is likewise exempt. ORS 307.115 exempts property of nonprofit corporations held for public parks or recreation purposes but that section only applies if the articles of incorporation meet certain stipulated requirements and the corporation has filed, on or before April 1 of any year with the assessor an application for an exemption and the county governing body has approved the exemption. No evidence was introduced indicating compliance with ORS 307.115 and, under the circumstances, plaintiffs cannot claim the tax advantage of exemption. *Brooks Resources v. Dept. of Rev.,* 276 Or 1177, 1185, 558 P2d 312 (1976).

## Valuation of Retained Interest

ORS 308.205(1) provides that:

> "If the property has no immediate market value, its true cash value is the amount of money that would justly compensate the owner for loss of the property."

The Oregon Supreme Court has held that in such a situation the plaintiffs' property has no true cash value for property tax purposes. *Tualatin Development v. Dept. of Rev.,* 256 Or 323, 473 P2d 660 (1970). Accordingly, the value retained by plaintiffs in parcel 801 should be assessed as zero on the assessment roll. Under the circumstances, it is unnecessary to respond to plaintiffs' allegation in the complaint that, if taxable, the parcel should be valued as Western Oregon timberland less a substantial reduction because of the State of Oregon's easement.

## Farmland Penalty

The appraisal offered by defendant's appraiser (Def Ex A, Addenda, pp 33-34) indicates that parcel 801 was carved out of parcel 800 in 1973, that in the same year the easement thereon was purchased by the state, that in 1976 the zone was changed to exclusive farm use and assessed as such by the county assessor in that year and in 1977, 1978 and 1979 but disqualified by the county assessor in 1980 and a market value determined in that year. ORS 308.397 provides for disqualification by the county assessor upon discovery that the land is no longer being used as farmland and ORS 308.399 provides for a penalty in that event. Presumably, it is that penalty that plaintiffs allege they are not subject to. Plaintiffs could have resolved this matter early on by either advising the

County Planning Commission or the county assessor to remove parcel 801 from the exclusive farm use zone. There is no evidence that they did so. Not having done so, only one other recourse appears to have been available to the plaintiffs; to wit, to have proceeded under ORS 308.399(3) which provides that no penalty shall be imposed if the land is disqualified if "(a) [t]he land is acquired by a governmental agency as a result of the lawful exercise of the power of eminent domain or the threat or imminence thereof; * * *." No evidence was introduced by plaintiffs indicating that the state took the property by eminent domain or that there was a threat or imminence thereof. Under the circumstances, there is no basis upon which to grant plaintiffs relief in this regard.

## Parcels 600 and 800

Parcel 600 consists of 9.72 acres; parcel 800 of 35.81 acres. Plaintiffs in the second and third causes of suit, in their complaint, allege as to both parcels that the property should be reduced from the values as fixed by the assessor and confirmed by the defendant to a value based upon Western Oregon forest land of $137 per acre and that the farmland penalty should have been eliminated.

## Farmland Penalty

For the reasons set forth earlier herein, to wit, there is no basis upon which to grant plaintiffs relief, the farmland penalty cannot be eliminated.

## Forest Land

The plaintiffs alleged that the subject property should be assessed as forest land for the tax year 1980-1981 despite the fact that application for forest use designation as mandated by ORS 321.358(1) was not timely made. The plaintiffs contend that ORS 321.257(2)(b) which defines "forest land" as land in Western Oregon "the highest and best use of which is the growing and harvesting of * * * trees * * *" is self-executing. The plaintiffs alleged that the highest and best use of the subject property is the growing of trees and that under this circumstance an application for forest-use designation is not mandatory. It is possible to reach the conclusion of the plaintiffs, but a review of the statutes indicates it is not a reasonable construction. ORS 321.257(2)(a) defines forest land in Western Oregon "* * * which is being held or used for

the predominant purpose of growing and harvesting trees of a marketable species and has been *designated* as forest land * * *." (Emphasis supplied.)

■     ORS 321.347(2) provides that "[l]and *designated* as forest land pursuant to ORS 321.605 to 321.680 (1975 Replacement Part) shall retain the original date of such *designation.*" (Emphasis supplied.) ORS 321.618(1) provided and ORS 321.358(1) currently provides that "[a]n owner of land desiring that it be *designated* as forest land shall make application to the county assessor on or before April 1 * * *." ORS 321.257(2)(b) contains no language, as does ORS 321.257(2)(a), requiring highest and best use forest land to be designated by the assessor as such, but this is because highest and best use forest land has already been determined as such by the assessor whereas land "* * * held or used for the predominant purpose of growing and harvesting trees * * *" may be assessed by the assessor prior to application by the owner at its highest and best use as farmland or other use other than as forest land. The Benton County Assessor for the assessment year 1980 had not yet determined that the highest and best use of Parcels 600 and 800 was forest land. On the contrary, the parcels were assessed at a highest and best use as rural tract acreage (Parcel 600) or as zoned, i.e., exclusive farm use Parcel 800).

At one point in the trial, reference was made that plaintiffs received notice that the subject property had been disqualified for special farm use assessment too late to apply for forest land assessment. However, no evidence was presented to corroborate this statement. In addition, plaintiffs' complaint incorporated the opinion and order from which the appeal is made and that opinion and order states that the petitioners were notified on January 30, 1980, that the subject property did not meet the requirement for special assessment as farm-use property. ORS 321.358 requires that an owner of land desiring that it be designated as forest land must make application to the county assessor on or before April 1. If the notice of disqualification was sent to the plaintiffs as alleged, there was ample time in which to make application for forest use before April 1. The alleged date of notification was neither refuted nor substantiated; therefore, the court concludes that a question of estoppel is not an issue.

The plaintiffs' witness, Mr. Layman, alleged that the highest and best use of Tax Lot 600, on the subject date, was as a small woodlot or for limited recreational use due to flood hazard and soil type. (Pl Ex 3.) Mr. Layman alleged that the same factors, flood hazard and soil type, of Tax Lot 800 indicated that its highest and best use was to be left in the natural condition with an occasional harvest of maple and cottonwood trees its economic utility. (Pl Ex 4.)

He offered three allegedly comparable sales to support his conclusion of value for both parcels. Comparable sale No. 1 contained 30.55 acres, No. 2 had 115.14 acres and No. 3 consisted of 66 acres. The sales occurred in February 1976, July 1977, and August 1979. No adjustments were offered for time or for size. When questioned about this absence of adjustment, Mr. Layman replied that there had been little change in this type of land since 1976.

Mr. Layman alleged that the soil type of Tax Lots 600 and 800 consisted of well-drained to excessively drained sandy, silt loam. The defendant's appraiser alleged that tax lot 600 was comprised mainly of Cloquato silt loam, based on a Benton County soil survey by the United States Department of Agriculture's Soil Conservation Service, and had a high inherent soil productivity allowing high yields of a wide range of row crops. (Def Ex A, at 7.) Mr. Cook alleged that Tax Lot 800 had a lower inherent soil productivity rating based on an analysis by a soil scientist from Oregon State University but that with normal farming practices could be made to produce a wide range of row crops. (Def Ex A, at 8.)

When Mr. Layman was cross-examined regarding his allegations of soil class of the two tax lots, he replied that he used soil conservation information but made his own analysis. When questioned as to whether he did any auger work to reach his determination, Mr. Layman responded that he didn't need to because the soil was "washed" enough to see what class it was. Mr. Layman stated that appraising was "strictly an exercise of judgment."

The court agrees that property appraising is far from an exact science. *Riensche v. Dept. of Rev.,* 8 OTR 304 (1980). However, the conclusions of an expert witness must be based on supporting data and evidence to be persuasive. *Domogalla et al v. Dept. of Rev.,* 7 OTR 340 (1978).

The appraisal submitted by the plaintiffs (Pl Ex 2, 3 and 4) lacks supporting evidence and detail. No information regarding adjustments was offered to explain any differences between the three offered comparable sales and the three parcels making up the subject property. The witness' testimony was equally lacking in supportive detail to show that his "judgment call" was accurate.

ORS 305.427 places the burden of proof upon the party seeking affirmative relief. The plaintiffs have failed to sustain this burden in supporting their valuation of Tax Lots 600 and 800. Therefore, those values found on the Benton County Assessor's roll are hereby affirmed. On January 1, 1980, the true cash value of Tax Lot 600 was $65,750 and Tax Lot 800 had a true cash value of $29,350. The assessor shall amend the roll to show that Tax Lot 801 had a true cash value of zero on January 1, 1980. If taxes have been paid by the plaintiffs in excess of those required by this opinion, the excess with statutory interest thereon, shall be remitted to the plaintiffs, pursuant to ORS 311.806 and 311.812.

No costs to either party.