IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

MARY LOU CURTI,                          )
                                         )
                    Plaintiff,           )    TC-MD 230087N
                                         )
        v.                               )
                                         )
JOSEPHINE COUNTY ASSESSOR,               )
                                         )
                    Defendant.           )    **DECISION**

Plaintiff appealed the assessment of property identified as Account R302171 (subject property) for the 2022-23 tax year. A trial was held by remote means on November 7, 2023. Ashleigh Gamboni-Diehl (Gamboni-Diehl), Plaintiff's authorized representative, appeared and testified on behalf of Plaintiff. Frank Diehl (Diehl), Plaintiff's power of attorney, also testified on behalf of Plaintiff. Constance Roach (Roach) appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 to 21 and Rebuttal Exhibits 22 to 24, and Defendant's Exhibits A to D were received without objection. Plaintiff's Rebuttal Exhibit 23 is an application for Small Tract Forestland special assessment. Plaintiff requested that the court mediate the application with Defendant. The court declined because the application had not yet been reviewed by Defendant, so it was not properly before the court. *See* ORS 321.706 (2021) (application submitted to and reviewed by assessor). Plaintiff offered more documents after trial pertaining to the Small Tract Forestland application, but the court declined to consider information submitted after trial. (*See* Ptf's Ltr, Jan 8, 2024.) Plaintiff filed a request for costs and disbursements on November 21, 2023. Defendant filed its objection to Plaintiff's request on December 1, 2023.

## I. STATEMENT OF FACTS

The subject property is an 18.07-acre parcel, of which 16.91 acres were specially

assessed as designated forestland for the 2022-23 tax year. (*See* Ptf's Ex 11 at 1; Def's Exs A, D.) Plaintiff seeks special assessment for the entire 18.07-acre parcel, writing that "it remains unknown" why 1.16 acres "are not classified as forestland." (Ptf's Ex 19 at 1-2.)

A prior owner of the subject property applied for special assessment of 16.07 acres in 1977 and received approval at that time.[1] (*See* Def's Ex A at 1-2.) The 1977 approval excluded a 2.0-acre homesite, which Roach speculated may have been the standard at that time. (*See id.* at 2.) In 1984, Defendant increased the specially assessed acreage to 16.91 acres with a 1.0-acre homesite, and the remaining 0.16 acres noted as "RA."[2] (*Id.* at 2.) No part of the specially assessed property has ever been disqualified from special assessment. (Def's Ex D.) Defendant has never received an application for special assessment for the remaining 1.16 acres.

Diehl testified that he purchased the subject property for growing trees and mining, and it is where he raised his children.[3] He no longer lives on site, but he visits frequently to protect equipment, prevent encampments, and manage the forest. Gamboni-Diehl testified that she does not live at the subject property, either, but occasionally occupies it for similar purposes. Diehl testified that the subject property is a "showcase" for best forest practices. Gamboni-Diehl testified that she hated working in the forest as a child, but now loves it as an adult. Her father did a great job maintaining the subject property and it "looks like a national forest." Gamboni-Diehl created a detailed forest management plan for the subject property. (Ptf's Ex 1.) Based on those efforts, Plaintiff alleges that the entire property qualifies for special assessment.

---

[1] Roach testified that the notation "continued" written on the application suggests that the subject property may have already been in special assessment, but a new owner had to reapply upon purchase. (*See* Def's Ex A at 1.)

[2] It is unclear what prompted Defendant to increase the specially assessed acreage. Roach speculated that the 0.16 acres may not have been included because they did not meet minimum stocking requirements.

[3] Diehl does not own the subject property. (*See* Ptf's Ex 8 (warranty deed listing Plaintiff).) Presumably Plaintiff permitted Diehl and his daughter Gamboni-Diehl, and other family members to use the subject property.

Roach testified that the subject property is in the rural residential 5 (RR5) zone, so special assessment is only available upon application. She testified that the homesite is not eligible for special assessment under ORS 308A.253 because it is not located in any of the farm or forest use zones identified in Oregon Administrative Rule (OAR) 150-308-1120. Even if the subject property were in an eligible zone, Roach determined the homesite would not qualify for special assessment because it was not occupied and used in connection with forestry.

Gamboni-Diehl testified that she did not understand why the subject property was not in a forest use zone, noting nearby property is in the "woodlot resource" zone. Roach testified that the subject property has never been in a forest use zone: in 1978, it was zoned SR-5, "suburban residential," and that zone became RR5. Roach testified that, based on the zone, the highest and best use of the subject property is residential: it can be legally divided into three parcels, so the homesite is valued accordingly. Gamboni-Diehl testified that, based on her communication with a nonprofit organization, she believes Defendant can change the zone. (*See* Ptf's Ex 21.) Roach testified that Defendant has no power to change the subject property's zone. If the subject property were re-zoned, Defendant would value it in accordance with the new zone.

For the 2022-23 tax year, the subject property's original tax roll value was $467,810 with $55,070 allocated to the improvements. (*See* Compl at 3.) Roach testified that, upon learning the subject property house has not had electricity since 2010 and reviewing photographs of its condition, she recommends reducing the subject property's improvements value to $23,500 and sustaining its land value. (*See* Def's Status Report, Jul 11, 2023.) As noted above, Plaintiff maintains that the entire 18.07-acre parcel qualifies for special assessment. Plaintiff also asks the court to "appoint a State Forest Ranger" and a surveyor so Plaintiff can "complete the Forest Management Plan" and "clarify the status of the 18.07 acres." (Ptf's Ex 19 at 3-4.)

## II. ANALYSIS

The issue presented is whether 1.16 acres of the subject property qualifies for forestland special assessment for the 2022-23 tax year. Plaintiff made additional requests for a zone change and for court assistance to access services of the state forest ranger and a surveyor. As the party seeking affirmative relief, Plaintiff bears the burden of proof by a preponderance of the evidence, which means "the greater weight of evidence, the more convincing evidence." ORS 305.427; *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971).[4]

A.      *Western Oregon Forestland Special Assessment*

For purposes of Western Oregon Forestland special assessment, "forestland" is defined as "land in western Oregon that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland or land in western Oregon, the highest and best use of which is the growing and harvesting of such trees." ORS 321.257(2). Thus, "there are two ways for land in western Oregon to be 'forestland' for purposes of special assessment: (a) it can be designated as forestland and held with the predominant use of growing trees for commercial timber harvest; or (b) it can be land with a 'highest and best use' of growing trees for commercial harvest." *Angel v. Dept. of Rev.*, 21 OTR 444, 448 (2014). For land to be "designated" as forestland, an application must be made "to the county assessor on or before April 1 of the assessment year for which special assessment as forestland is first desired * * *." ORS 321.358; *see also Marchel v. Dept. of Rev.*, 9 OTR 317, 322 (1983) (reaching same conclusion under predecessor statutes). By contrast, highest and best use forestland requires no "designation" as forestland because it "has already been determined as such by the assessor * * *." *Marchel*, 9 OTR at 322; *see also Kliewer v. Dept. of Rev.*, 15 OTR

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2021.

139, 146 (2000) (highest and best use forestland need not "have been designated forestland in the first place").

The evidence presented demonstrates that 16.91 acres of the subject property has been designated forestland since at least 1984 and Defendant has not disqualified any portion of the subject property from forestland special assessment. With respect to the remaining 1.16 acres, the court finds no evidence that an application was made to qualify (or "designate") that portion of the property for forestland special assessment. An application is a necessary first step for designated forestland special assessment. Without an application and determination by Defendant, there is nothing for the court to review. *See* ORS 305.275(1)(a)(C) (authorizing appeal by person who is "aggrieved by an affected by an act, omission, order or determination of * * * [a] county assessor or other county official, including but not limited to * * * the denial of special assessment under a special assessment statute * * *").

The other avenue for forestland special assessment is for land with a highest and best use that is growing and harvesting trees of a marketable species. Plaintiff challenges the subject property's current RR5 zoning and Defendant's resulting conclusion that the subject property's highest and best use is residential, not forestland. As this court has explained, even when "the land is excellent for growing trees and is ideally suited for such," land zoned for residential use has "a higher economic value than just for forestland use alone." *Kliewer*, 15 OTR at 146. And if the subject property's highest and best use was forestland, no application for designation would have been required. *See id.* The subject property was not eligible for special assessment as highest and best use forestland.

B.      *Homesite Special Assessment*

A portion of the subject property includes a dwelling (or at least a former dwelling),

which was evidently excluded from forestland special assessment in one or more prior applications. "Land under a dwelling that is used in conjunction with the activities customarily carried on in the management and operation of forestland held or used for the predominant purpose of growing and harvesting trees of a marketable special shall qualify for special assessment under ORS 308A.256." ORS 308A.253(1). The statute imposes additional requirements for a qualifying homesite, including more detail on permissible use of the dwelling. *See* ORS 308A.253(5). Most importantly here, the definition of "forestland" for purposes of the homesite special assessment is narrower than the definition of "forestland" for purposes of Western Oregon Forestland special assessment. *Compare* ORS 308A.250(2) with ORS 321.257(2); *see also Kincaid v. Jackson County Assessor*, TC-MD 120765D, 2013 WL 786130 (Or Tax M Div, Mar 4, 2013) (describing homesite special assessment as "more stringent").

ORS 308A.250(2) defines "forestland" for purposes of the homesite special assessment:

"(2) 'Forestland' means forestland that is a parcel of land of more than 10 acres *that has been zoned in the comprehensive plan for exclusive farm use, forest use or farm and forest use* and that is, as of the assessment date for which value for the forest homesite is being determined:

"(a) Land that has as its highest and best use the growing and harvesting of trees of a marketable species;

"(b) Land that has been designated as forestland under ORS 321.257 to 321.390 or 321.805 to 321.855; or

"(c) Land that is assessed as small tract forestland under ORS 321.700 to 321.754."

(Emphasis added.) As Roach noted, OAR 150-308-1120(2), which implements ORS 308A.250, lists those same zoning requirements. The subject property was zoned RR5, so the court agrees with Roach that the homesite does not qualify for special assessment under ORS 308A.253.

/ / /

C.    *Plaintiff's Additional Requests*

Plaintiff asked the court to appoint a state forest ranger and surveyor to assist Plaintiff in completing the forest management plan and, perhaps, assist Plaintiff with qualifying the entire subject property for special assessment. Plaintiff cited no authority in support of those requests and the court is aware of none. Generally, this court has jurisdiction over "questions of law and fact arising under the tax laws of the state." ORS 305.410(1); *see also Sanok v. Grimes*, 294 Or 684, 662 P2d 693 (1983) (dismissing tort claims against assessor but allowing property tax claims to proceed, because claims arising under the tax laws must have some bearing on tax liability). Plaintiff's requested relief appears to lie outside of the state's tax laws.

Plaintiff requests costs and disbursements in the amount of $387.52 for the filing fee, postage expenses, the expense to make copies, and the expense to send exhibits by fax. TCR-MD 16 B states that "costs and disbursements may be allowed to the prevailing party * * *." *See also Wihtol v. Dept. of Rev.*, 21 OTR 260 (2013) (concluding magistrates have discretionary authority to award costs and disbursements under *former* ORS 305.490(2)).[5] The prevailing party is determined on a claim-by-claim basis and includes a taxpayer who receives a reduction in value. *See Wihtol v. Multnomah County Assessor*, TC-MD 120762N, 2014 WL 274126 at *2-3 (Or Tax M Div, Jan 24, 2014) (citations omitted). Here, the court orders a reduction in the subject property's improvements real market value as determined by Defendant. That relief was available to Plaintiff without going to trial and Plaintiff did not prevail in her claim to expand the subject property's special assessment. Accordingly, the court, in its discretion, denies Plaintiff's request for costs and disbursements.

---

[5] ORS 305.490 was amended between 2013 and 2023, resulting in the language in *former* subsection (2) appearing in subsection (3) in the 2023 version.

### III. CONCLUSION

Upon careful consideration, the court concludes that Plaintiff's request to qualify an additional 1.16 acres of the subject property for forestland special assessment for the 2022-23 tax year must be denied. The court adopts Defendant's recommended reduction in the subject property's tax year 2022-23 improvements real market value. The court declines to award Plaintiff costs and disbursements. Now, therefore,

IT IS THE DECISION OF THIS COURT that, as determined by Defendant, the tax year 2022-23 improvements real market value for property identified as Account R302171 was $23,500.

IT IS FURTHER DECIDED that Plaintiff's appeal, including request for costs and disbursements, is otherwise denied.

Dated this _____ day of April 2024.

_____

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This Decision was signed by Presiding Magistrate Allison R. Boomer and entered on April 5, 2024.*