IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| ALICE LORENE TRIPLETT (TODD), | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 240562N (Control) |
| | ) | TC-MD 240563N |
| | ) | TC-MD 240564N |
| | ) | |
| v. | ) | |
| | ) | |
| COLUMBIA COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appealed Defendant's disqualification from forestland special assessment of a portion of property identified as Accounts 21231, 21224, and 21225 (subject property) for the 2024-25 tax year.[1] Defendant's disqualified the subject property based on failure to meet minimum stocking requirements. A trial was held on January 21, 2025, in the courtroom of the Oregon Tax Court. Plaintiff appeared and testified on her own behalf. David Leader (Leader), Chief Appraiser, appeared and testified on behalf of Defendant. Carmel Loncosky (Loncosky), appraiser, also testified on behalf of Defendant. Plaintiff's Exhibits PE 1-4 and Defendant's Exhibits DE 1-70 were received without objection. The parties' written closing arguments were filed by February 21, 2025.

I. STATEMENT OF FACTS

The subject property totals approximately 6.6 acres. (*See* PE 2-3; DE 2-5.[2]) The initial application for special assessment was made and approved in 2010. (DE 2-5.) In January 2024,

---

[1] Plaintiff separately appealed each of the three accounts, but they are contiguous parcels treated as a unit with part of the disqualified portion on each account. (*See* DE 6 (aerial photo of parcels); DE 9-20 (disqualification letters).) The three cases were heard together for trial. The court, on its own motion, hereby consolidates the cases.

[2] The original application for special assessment includes a fourth account that was not appealed. (DE 2-5.)

Defendant sent Plaintiff letters notifying of an intent to disqualify a portion of the subject property from special assessment due to failure to meet the stocking requirements. (DE 7-8.) Leader testified that the letter was not required but sent as a courtesy. He presented aerial photos of the subject property from 2009, 2018, and 2024, noting no tree growth in the portion ultimately disqualified. (DE 1, 8, 21-23.) Leader testified that he attempted to visit the subject property in May 2024, but found no one there. Defendant sent Plaintiff letters on June 21, 2024, disqualifying approximately 2.0 acres of the subject property from special assessment for the 2024-25 tax year due to failure to meet the stocking requirements. (DE 9-20.)

After receiving the disqualification letters, Plaintiff submitted a forest management plan to Defendant in August 2024. She testified that she submitted the plan based on Defendant's letter giving that option. (*See* PE 1 (January 23, 2024, letter of intent to disqualify states "[y]ou may be able to avoid disqualification and the additional tax by filing a *Forest Management Plan* with our office if you plan to re-stock the acreage * * *").) Plaintiff's forest management plan described the stocking as a mixture of evergreen and deciduous hardwood. (PE 2-3.) The plan listed species to be planted as a mixture of 250 western cedar, 200 Nordmann fir, and 200 grand fir. (*Id.*) It indicated that planting occurred in spring 2024 and would again in October 2024. (*Id.*) The plan included a note that "a couple spots are very wet in winter and very dry in summer." (*Id.*) Plaintiff testified that, in accordance with the plan, she planted 500 trees in spring 2024 but lost some of them. She planted again in late fall 2024 and early winter 2025.

Defendant received the forest management plan on August 16, 2024. (DE 24.) Leader testified that he rejected Plaintiff's forest management plan by letter dated September 24, 2024, because the subject property was already disqualified for the 2024-25 tax year. (*See* DE 24-26.) Leader visited the subject property on October 24, 2024, and provided photos. (DE 27-68.) He

testified that the trees looked unhealthy, and he observed numerous "cow pies." Leader's observations from the site visit confirmed his view that Plaintiff's secondary use of "running cattle" was incompatible with the requisite primary purpose of growing trees. Plaintiff testified that she has "run cattle" off and on over the years and had two cattle at the time of planting in spring 2024. Since spring 2024, she butchered those two cattle and had no plans to get more.

Plaintiff presented a letter dated December 19, 2024, from Kevin Nelson (Nelson), Small Forestland Owner Forester for the Columbia County Unit. (PE 4.) Nelson inspected the subject property on December 10, 2024, "to determine the forest deferral qualification status and give management advice for these parcels." (*Id.*) He observed 2.5 acres where forest seedlings were planted "to aforest old field areas," noting they had been planted several times with a mix of conifer and hardwood. (*Id.*) "Seedlings have had varying degrees of survival and success, but there are currently 100-150 live seedlings per acre. With a few additional seedlings to be planted this winter (2025), the parcels should have the required 200 seedlings per acre stocking to qualify for deferral." (*Id.*) Like Leader, Nelson observed some detrimental impact from cattle:

> "Overall, the field areas are in decent shape for tree stocking, and just need a small amount of inter-planting. Some of the mortality was due to having grazing animals among the seedlings, and the animals are no longer there, and should contribute to better survival going forward."

(*Id.*) He recommended interplanting 100 additional Doug fir seedlings where stocking was light, with no need for more brush control. (*Id.*)

Loncosky testified that OAR 150-321-0340 provides the relevant timeline for stocking, which is 20 percent each year and fully stocked in five years. She testified that, measuring from Plaintiff's 2010 application, the stocking requirements were not satisfied. Lonconsky testified that Plaintiff had planted trees, but the cows seemed to be a problem.

/ / /

## II. ANALYSIS

The issue presented is whether the subject property qualified as designated forestland for the 2024-25 tax year, such that it should not have been disqualified from special assessment. That question turns on (1) whether the subject property satisfied minimum stocking requirements and, if not, (2) whether the disqualification may be reversed based on Plaintiff's actions taken following disqualification. As the party seeking affirmative relief, Plaintiff bears the burden of proof by a preponderance of the evidence, which means "the greater weight of evidence, the more convincing evidence." ORS 305.427; *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971).[3]

"[T]here are two ways for land in western Oregon to be 'forestland' for purposes of special assessment: (a) it can be designated as forestland and held with the predominant use of growing trees for commercial timber harvest; or (b) it can be land with a 'highest and best use' of growing trees for commercial harvest." *Angel v. Dept. of Rev.*, 21 OTR 444, 448 (2014); *see also* ORS 321.257(2) (listing two types of forestland). For land to be "designated" as forestland, an application must be made "to the county assessor on or before April 1 of the assessment year for which special assessment as forestland is first desired * * *." ORS 321.358; *see also Marchel v. Dept. of Rev.*, 9 OTR 317, 322 (1983) (reaching same conclusion under predecessor statutes). By contrast, highest and best use forestland requires no "designation" as forestland because it "has already been determined as such by the assessor * * *." *Marchel*, 9 OTR at 322; *see also Kliewer v. Dept. of Rev.*, 15 OTR 139, 146 (2000) (highest and best use forestland need not "have been designated forestland in the first place"). In this case, the subject property became designated forestland after Plaintiff's application was granted in 2010.

/ / /

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2023.

Once designated as forestland, a property remains in special assessment until the assessor removes the designation for a reason enumerated by statute. *See Kaur v. Clackamas County Assessor*, TC-MD 180242G, 2019 WL 259507 at \*3 (Or Tax M Div, Jan 18, 2019). As relevant here, ORS 321.359(1)(b)(C) requires the assessor to remove the forestland designation upon discovery "that the land is no longer forestland." (*See, e.g.,* DE 9 (disqualification letter citing to statute).) Specifically, Defendant wrote that the subject property "no longer meets stocking and species requirements." (*Id.*)

A.       *Whether the Subject Property Met Minimum Stocking Requirements*

As noted above, land may be designated forestland if the owner makes an application to the county assessor. *See* ORS 321.358(1). "The county assessor shall approve an application if * * * if the assessor finds that the land is properly classifiable as forestland." ORS 321.358(4). One basis upon which the assessor "shall not find land properly classifiable as forestland" is if "the land does not substantially meet minimum stocking or acreage requirements under rules adopted by the department." ORS 321.358(4)(b). The department's rule on minimum stocking requirements requires compliance with stocking requirements established by the state forester. OAR 150-321.0340(2). If land does not meet minimum stocking requirements, "the owner must give the assessor a written management plan for establishing trees to meet the minimum stocking requirements." OAR 150-321.0340(3). Under the plan:

> "At least 20 percent, but not less than two acres, of the area in the plan must be planted by December 31 of the first assessment year that the land is designated as forestland. Each additional year thereafter, a minimum of 20 percent of the area must be planted. At the end of the fifth year after the assessor approves the designation, 100 percent of the area in the plan must be planted. The assessor may grant extensions to fulfilling planting requirements if a loss of planted stock occurs due to conditions beyond the control of the landowner."

OAR 150-321.0340(3)(d).

In Defendant's view, disqualification of 2.00 acres of the subject property was required because it has never been fully stocked in compliance with OAR 150-321.0340(3)(d). (*See* Def's Closing Argument at 1.) Plaintiff does not appear to contend that the subject property was fully stocked in 2024, as confirmed by the December 2024 letter from the forester so stating. This court has previously noted that, by its terms, OAR 150-321.0340(3)(d) applies to newly designated forestland, not forestland that has been designated for many years. *See Kaur*, 2019 WL 259507 at *5 n7. Here, the subject property has been designated since 2010. However, Defendant presented persuasive evidence through historical photographs that the disqualified portion of the subject property has never achieved minimum stocking. Plaintiff did not present any contrary evidence. Accordingly, the court finds that disqualification of the subject property was supported by ORS 321.359(1)(b)(C). The court next considers whether Plaintiff's creation of a forest management plan or other actions following disqualification changes that outcome.

B.      *Relevance of Plaintiff's Remedial Actions Taken After Disqualification*

After receiving the disqualification letters, Plaintiff took steps to remedy the subject property's disqualification. In August 2024, she created a forest management plan and submitted it to Defendant. In December 2024, she provided a letter from a forester who walked the subject property. Both of those actions occurred after the subject property was disqualified, so the question becomes one of timing. Generally, special assessment is determined as of January 1 each year, which is also the assessment date. *See* ORS 308.007(1)(a).[4] However, the county has until August 15 each year to disqualify land upon discovery that it is no longer forestland. ORS

---

[4] Numerous special assessment programs state that qualification is determined as of January 1. *See, e.g.,* 308A.062(2) (exclusive farm use); 308A.068(3) (nonexclusive farm use); ORS 308A.424(5) (wildlife habitat); ORS 308A.456(5) (conservation easement); and ORS 321.709(2) (small tract forestland).

321.366.[5]  A disqualification mailed after August 15 would pertain to the next tax year.  That suggests that the county has some leeway to consider additional information between January 1 and August 15.  Here, Defendant received Plaintiff's forest management plan on August 16, 2025, too late for Defendant's consideration by either measure.

The appeal before this court is *de novo*, so the court may consider evidence that was not provided to the county when it made its determination.  *See Lance v. Hood River County Assessor*, TC-MD 160020N, 2016 WL 5647382 at *4 (Or Tax Mag Div, Sep 29, 2016), *citing* ORS 305.425(1).  Thus, the question is whether Plaintiff's forest management plan demonstrates that the subject property qualified for special assessment for the 2024-25 tax year.  The forest management plan reported that Plaintiff had planted in spring 2024 and intended to plant again in October 2024.  That plan would likely be sufficient for newly designated forestland to become fully stocked within five years of receiving the designation.  For the subject property, which has been designated since 2010, it does not demonstrate that the subject property was adequately stocked.  Plaintiff's forest management plan is insufficient to reverse disqualification.

Plaintiff also presented a letter from the forester dated December 2024, stating that the subject property should be adequately stocked after another planting in winter 2025.  For the same reasons as the forest management plan, the forester's letter does not demonstrate that the subject property was adequately stocked for the 2024-25 tax year.  However, Plaintiff argues that another statute, ORS 321.367(6), applies.  (*See* Ptf's Closing Arg at 1.)  That statute states:

> "When the owner of land disqualified from forestland assessment provides satisfactory information to the State Forester of subsequent action taken to correct the deficiency resulting in the disqualification of land, or provides an acceptable management plan to correct such deficiency, the State Forester shall so indicate to the county assessor."

---

[5] That deadline mirrors the assessor's deadline to act upon an application for forestland special assessment. ORS 321.358(5).

ORS 321.367(6). Plaintiff maintains that the forester's letter demonstrates that the forester was satisfied with Plaintiff's deficiency correction, as contemplated by ORS 321.367(6). (Ptf's Closing Arg at 1.) Defendant responds that the purpose of the forester's letter was to give Plaintiff guidance, not to notify Defendant that the subject property qualified for special assessment. (Def's Closing Arg at 1; Def's Rebuttal to Ptf's Closing Arg at 1.)

The court agrees with Defendant about the meaning of the forester's letter when viewed within the statutory scheme. The relevant context of ORS 321.367(6) includes other provisions of the same statute. *See PGE v. Bureau of Labor & Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). ORS 321.367 requires the State Forester to review forestlands that fail to meet minimum stocking and to work with forestland owners when the State Forester "has reason to believe that forestland is not being managed as forestland * * *." ORS 321.367(1), (2). Subsections (3) and (4) of that statute set out remediation and notification processes for the State Forester to follow when land is not being managed as forestland. Ultimately, these provisions amount to another path to disqualification from forestland special assessment that is initiated by the State Forester. There is no evidence that Defendant disqualified the subject property on that basis, so the requalification provision under ORS 321.367(6) is inapplicable.

Even if ORS 321.367(6) applied, the forester's letter on December 19, 2024, does not state that the subject property met minimum stocking requirements or otherwise qualified for special assessment. Rather, the letter identified recommended actions and stated that, after additional planting in winter 2025, "the parcels should have the required 200 seedlings per acre stocking to qualify for deferral." (PE 4.) Thus, the court finds no basis to reverse the disqualification under ORS 321.367(6) and the forester's letter on December 19, 2024.

/ / /

III. CONCLUSION

Upon careful consideration, the court concludes that 2.00 acres of the subject property did not qualify for forestland special assessment for the 2024-25 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal of Accounts 21224, 21225, and 21231 for the 2024-25 tax year is denied.

_____

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This Decision was signed by Presiding Magistrate Allison R. Boomer and entered on June 17, 2025.*